```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
FREDERICK J. HARRINGTON JR.,

                    Plaintiff,
                                                              OPINION AND ORDER
        -against-                                             06-CV-2900 (NG) (VVP)

ATLANTIC SOUNDING CO., INC.,
WEEKS MARINE, INC., and THE MV
CANDACE, her engines, equipment, and
tackle, in rem,

                    Defendants.
------------------------------------------------------------x
```

**GERSHON, United States District Judge:**

Plaintiff Frederick J. Harrington Jr. ("Harrington") brings this action against defendants Atlantic Sounding Co., Inc. ("Atlantic Sounding") and Weeks Marine, Inc. ("Weeks Marine"), pursuant to the Jones Act, 46 U.S.C. § 688, for injuries sustained as a result of defendants' negligence while he was employed as a seaman aboard the defendant vessel MV CANDACE ("CANDACE"). Plaintiff also asserts claims under general maritime law for unseaworthiness, maintenance and cure, and lost wages. Defendants seek to dismiss the complaint, or, in the alternative, compel arbitration and stay the instant action. Defendants also move to dismiss the *in rem* action against the CANDACE for lack of jurisdiction.

By order dated January 12, 2007, the court deferred ruling on defendants' motion pending an evidentiary hearing on the validity of the post-injury arbitration agreement between plaintiff and his employer. Based upon plaintiff's physical condition, the evidentiary hearing was delayed until July 18, 2007. At the hearing, plaintiff presented his own testimony and that of Thomas Langan ("Langan"), Corporate Risk Manager for Weeks Marine. Defendants presented testimony from

Teresa Olivo ("Olivo"), Corporate Claims Manager for Weeks Marine, and, by way of deposition, Coral LaFrance ("LaFrance"), Assistant Manager, Mayflower Savings Bank, who is a licensed Notary Public. The following constitutes my findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I. FACTS

Harrington is a fifty-three year old former seaman. He was employed as a deckhand by Weeks Marine[1] and earned approximately $180.00 per day. Weeks Marine considered plaintiff a good employee, and his captain thought highly of him. On April 10, 2005, Harrington injured his back while working aboard the CANDACE, a tugboat owned and operated by Weeks Marine. He left the tugboat in May 2005 and returned to Buzzard's Bay, Massachusetts to live with his elderly father. At around the same time, plaintiff began receiving maintenance payments in the amount of $20.00 per day from Weeks Marine. The company also paid all of the medical expenses plaintiff incurred as a result of his injury.

Harrington was diagnosed with herniated discs and was told that he required lumbar surgery. As Corporate Risk Manager for Weeks Marine, Langan was responsible for reviewing plaintiff's medical records prior to authorizing any medical procedures. Harrington testified that, prior to the surgery, he was in excruciating pain and was taking Valium, Percocet, and Vicodin. He was confused, depressed, and angry, and the medication did little to alleviate his symptoms. Harrington was also drinking heavily, approximately "a fifth a day" of vodka. In fact, he admitted to struggling with alcohol abuse and having been in an out of rehabilitation programs on at least ten to twelve

---

[1] Atlantic Sounding is a wholly-owned subsidiary of Weeks Marine.

2

occasions.[2]

On July 11, 2005, seven days prior to his lumbar surgery, Harrington received a Claim Arbitration Agreement ("Agreement") form in the mail from Weeks Marine. The Agreement states that defendants "are obligated to pay maintenance and cure, . . . [but] are not currently responsible or liable for any other damages under general maritime law, the Jones Act or any other applicable law." In exchange for Harrington's agreement to arbitrate all claims, defendants agreed to advance plaintiff sixty percent (60%) of his gross wages until he was declared fit for duty, reached maximum medical improvement, or October 10, 2005, whichever came first. The Agreement provides that the "advances will be made twice monthly and will be credited against any settlement . . . or against any future arbitration award." The Agreement also states that "[a]ny filing fee, up to $750.00 and any deposit for compensation of the arbitrators shall be advanced by [defendants], subject to subsequent allocation." The final paragraph of the Agreement states:

> Other than the promises contained in this agreement, I have been given no other promises to induce me to sign this Claim Arbitration Agreement. I have not been coerced in any way into signing this agreement. I have signed this agreement knowingly and willingly.

When he read the Agreement, Harrington thought that, because he was a good employee, defendants were going to pay him sixty percent (60%) of his wages until he was able to return to work. Prior to receiving the Agreement, plaintiff, on various occasions, had communicated via telephone and written correspondence with employees of Weeks Marine, including Teresa Olivo, Corporate Claims Manager, and Rick Devine, Towing Manager. At no point did any Weeks Marine

---

[2] Plaintiff's most recent treatment for his alcohol abuse was in early March 2006, when he was admitted to a 30-day inpatient program at the Veteran's Administration hospital in Brockton, Massachusetts.

employee explain the terms of the Agreement to plaintiff, or inform him that it was a legal document and that he should seek the advice of an attorney prior to signing it. Nor did anyone from Weeks Marine advise Harrington of the legal rights that he was giving up by entering into the Agreement.

Harrington had lumbar surgery on July 18, 2005. Following his discharge from the hospital, he returned to his father's home where he spent several months recuperating from his surgery. While recovering, plaintiff was taking OxyContin and Vicodin for pain, but he also continued to drink heavily. On July 23, 2005, five days after his surgery, Harrington's father drove him to the Mayflower Bank to sign the Agreement and have it notarized. Plaintiff recalled being in "tough shape" when he went to the bank that day because, in addition to having taken pain medication, he had had "a couple of drinks." Before notarizing the Agreement, LaFrance, the Notary Public, read the acknowledgment aloud and asked Harrington if he understood what he was signing. He responded that he understood. LaFrance observed that Harrington had to be assisted by his father when sitting down and standing up, and he also appeared to be in pain. She could not readily discern whether he was intoxicated or in any way impaired; however, she insisted that she would not have notarized the Agreement if that had been the case.

When the Agreement expired in October 2005, Harrington was still unable to return to work. He contacted Weeks Marine to request that the company continue paying him sixty percent (60%) of his gross wages until he was fit to return to duty. In December 2005, defendants sent Harrington the Addendum-Claim Arbitration Agreement ("Addendum Agreement"), which, if he signed, would extend payments until January 10, 2006. On December 8, 2005, Harrington executed the Addendum Agreement, which set forth the same terms and conditions as the original Agreement. When plaintiff went to the bank to have the Addendum Agreement notarized, LaFrance followed the same

4

procedure that she had followed on July 23, 2005. She read the acknowledgment aloud and asked plaintiff if he understood what he was signing. He confirmed that he did. With respect to Harrington's condition on December 8, 2005, LaFrance said that he appeared to be in pain, but she could not tell if he was drunk or on drugs because she "is not around those type of people" so she "couldn't judge it." In her deposition testimony, she also noted that Harrington had been to the bank on three separate occasions and each time, he appeared disheveled and unkept. LaFrance said that, in general, Harrington was not a conversant individual and, when he did speak, he was incoherent.

After he signed the Addendum Agreement, defendants terminated Harrington's employment effective January 27, 2006. Shortly thereafter, Harrington, for the first time, sought the advice of an attorney, who brought this suit for personal injury. There is no challenge to plaintiff's termination.

## II. DISCUSSION

### A. Burden of Proof

Plaintiff argues that defendants have the burden of establishing the validity of the Agreement. In support of his argument, plaintiff relies on *Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 244 (1942), which held that "the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion and that it was made by the seaman with full understanding of his rights." Defendants argue that plaintiff's reliance on *Garrett* is misplaced because that case involved a seaman's release, whereas this case involves an agreement to arbitrate, which is not the equivalent of a release. Defendants contend that, by entering into an agreement to arbitrate, a seaman is not waiving his rights to pursue any potential claims, but is merely agreeing to have those claims resolved in a non-judicial forum, and that, under § 2 of the

5

Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, plaintiff has the burden of establishing a legal basis for avoiding the Agreement.

For purposes of this motion, the court will assume without deciding that defendant is correct that the burden is on the plaintiff, because the court finds that he has satisfied his burden.

**B. Validity of the Arbitration Agreement**

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. The language of this section evinces "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). "[Q]uestions of contractual validity . . . of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,* 346 F.3d 360, 365 (2d Cir. 2003). Therefore, "generally applicable contract defenses such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assoc., Inc., v. Casarotto*, 517 U.S. 681, 687 (1996).

The first inquiry is which state's law applies in determining the validity of the arbitration agreements. Harrington is a resident of Massachusetts, where he signed both the Agreement and the Addendum Agreement. Weeks Marine's principal place of business is New Jersey, where the arbitration agreements were drafted and deposited in the mail. Additionally, the employees with whom plaintiff communicated via telephone and letters are located in New Jersey. The parties maintain that the principles of contract law are fundamentally the same in both states and that the

application of either state's law would yield the same result.  The court will apply New Jersey law, since, as plaintiff argues, that state has the most significant relationship to the arbitration agreements and the employment relationship between the parties.

Turning to the evidence, I have carefully observed Harrington and find that he was credible and did not dissemble.  Based upon his testimony, which was not contradicted, the documentary evidence, and the consistent evidence of LaFrance, the court finds that the Agreement is unconscionable and therefore unenforceable.

New Jersey recognizes unconscionability as a basis for invalidating a contract.  *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 15 (2006); *Saxon Constr. & Mgmt Corp. v. Masterclean of North Carolina, Inc.*, 273 N.J. Super. 231, 236 (App. Div. 1994).  In *Howard v. Diolosa*, 241 N.J. Super. 222, 230 (App. Div. 1990), the court explained that unconscionability is an "overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms."

Although "[t]here is no hard and fast definition of unconscionability," *Lucier v. Williams*, 366 N.J. Super. 485, 492 (App. Div. 2004), New Jersey courts generally consider whether a contract was the result of both procedural and substantive unconscionability.  *Sitogum Holdings, Inc., v. Ropes*, 352 N.J. Super. 555, 564 (Ch. Div. 2002).  Procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process."  *Id.* at 564.  Substantive unconscionability "suggests the exchange of obligations so one-sided as to shock the court's conscience."  *Id.* at 565.  Applying a "sliding scale," a claim of

7

unconscionability can succeed when one form of it, either procedural or substantive, is greatly exceeded, while the other form is only marginally exceeded. *Id.* at 565-67; *B & S Ltd., Inc. v. Elephant & Castle Int'l., Inc.*, 388 N.J. Super. 160, 176 (Ch. Div. 2006).

Here, the facts establish both procedural and substantive unconscionability. As to the procedural issues, the timing of the original Agreement is of particular significance. At issue in this case is a post-injury arbitration agreement. Although Harrington was injured on April 10, 2005, defendants did not send him the Agreement until almost three months later, in July 2005. Plaintiff received the Agreement just days before he was scheduled to undergo major surgery and was faced with the prospect of a lengthy recovery. The defendants, who had plaintiff's medical records, were aware of this. When plaintiff signed the Agreement, just five days after his lumbar surgery, he was taking large doses of prescription pain medication and under the influence of alcohol, which impaired his ability to understand the nature and consequences of the document he was signing. Although LaFrance explained that she would not have notarized the Agreement if Harrington had been intoxicated or otherwise impaired, it is clear from her deposition testimony that she had doubts about plaintiff's condition. There is no evidence that defendants were aware of plaintiff's alcohol abuse, but defendants were aware of his heavily medicated state. Additionally, as defendants also knew, when he entered into the Agreement, Harrington was financially vulnerable. He was an injured seaman attempting to survive on a mere $20.00 per day. During the months immediately following his injury, Harrington was residing with his elderly father, who was his primary means of financial support at the time. For that reason, plaintiff made numerous calls to defendants seeking some financial relief.

Also, although plaintiff is a high school graduate and has taken several certification courses

in his field of expertise, he lacks sophistication. Indeed, prior to his lumbar surgery on July 11, 2005, Harrington's physician expressed concern as to whether plaintiff was able to provide informed consent for the procedure. He questioned whether plaintiff was able to read because, when asked to fill out the pre-operative instructions forms, plaintiff became agitated and said that he would not read them. He was then advised to take the forms home with him to discuss with his family. Having carefully observed Harrington during his testimony, it was clear that he had difficulty understanding the questions and articulating his responses. Plaintiff candidly acknowledged that he did not know the meaning of "arbitration," and, I find, was unfamiliar with his legal remedies under the Jones Act. When he signed the Agreement, Harrington was not represented by an attorney, nor was he advised by defendants that it was a legal document and advised to seek the advice of an attorney prior to signing it. The Agreement itself fails to set forth the terms in such a way that an average person would understand its substance. Nor does the Agreement include language advising plaintiff that, by entering into an agreement to arbitrate his claims against defendants, he was waiving his statutory right to a jury trial. In sum, all of the facts demonstrate that plaintiff was in a substantially weaker bargaining position than defendants.

Plaintiff has also established that the Agreement is substantively unconscionable. Most startling is the provision in the Agreement stating that, with the exception of maintenance and cure payments, defendants "are not currently responsible or liable for any other damages under general maritime law, the Jones Act or any other applicable law." Such misleading contractual language, especially when reviewed by a layperson without the benefit of legal counsel, creates the false impression that defendants *are not* subject to liability for any damages; if that is the case, then plaintiff, by signing the Agreement, is giving up nothing but obtains the wages he so badly needs.

9

Put another way, defendants asked plaintiff to sign an agreement which purports to eliminate any prospect of liability. Applying the "sliding scale" test for unconscionability under New Jersey law, the evidence of both procedural and substantive unconscionability is sufficient to render the Agreement unenforceable.[3]

Defendants further argue that, even if the Agreement is voidable, Harrington ratified the Agreement by accepting sixty (60%) of his gross wages as advances against any claim he might make, and he cannot now seek to escape his obligations. During the six month period that plaintiff accepted these advance payments, however, he was unaware of his legal rights and the unconscionable nature of the Agreement. Therefore, there was no ratification. Accordingly, the Agreement is unenforceable.

### C. *In Rem* Action Against the Vessel

Defendants seek dismissal of the *in rem* action against the CANDACE for lack of jurisdiction because the vessel has not been arrested. Defendants claim that the vessel is not currently within the jurisdiction of the Eastern District of New York, and there is no reasonable expectation that it will be in the Eastern District during the pendency of this action. Plaintiff has sought discovery regarding the future locations of the defendant vessel, and, despite numerous orders by the court directing defendants to provide plaintiff with this information, defendants have failed to do so.

Defendants argue that there is no basis for ordering the *in personam* defendants to provide information regarding the location of the vessel and cite *Rolls Royce Industrial Power v. MV*

---

[3] In *Nunez v. Weeks Marine, Inc.*, No. 06-3777, 2007 WL 2008105 (E.D. La. 2007), a case with similar facts, the court invalidated a seaman's post-injury arbitration agreement under § 2 of the FAA. Although it did not reach the issue of unconscionability, the court held that the agreement was unenforceable because "there was no 'meeting of the minds' and thus the Plaintiff did not knowingly consent to arbitration." *Id.* at *7.

*FRATZIS*, 905 F. Supp. 106, 107 (S.D.N.Y. 1995), which held that Rule 26(b) of the Federal Rules of Civil Procedure did not require the *in personam* defendant to provide plaintiffs with information regarding the location of the *in rem* defendant for the purpose of obtaining *in rem* jurisdiction over the vessel. This court respectfully disagrees with the conclusion in that case. It is commonplace to order a co-defendant – or for that matter a non-party – to provide discovery in aid of obtaining personal jurisdiction, and there is no sound reason not to do so here. Defendants have thirty (30) days to comply with the discovery previously ordered by the court.

### III. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss or, in the alternative, compel arbitration is denied. Defendants' motion to dismiss the *in rem* action against the defendant vessel is also denied without prejudice at this time, and Atlantic Sounding and Weeks Marine are ordered to comply with the discovery previously ordered by the court.

**SO ORDERED.**

　　*/s/ Nina Gershon*
**NINA GERSHON**
**United States District Judge**

Dated: September 11, 2007
　　　Brooklyn, New York